**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Elegant Custom Homes, Inc., ) | No. CV 06-2574-PHX-DGC |
| Debtor. ) | **ORDER** |
| Elegant Custom Homes, Inc., *et al*., ) | |
| Appellants, ) | |
| vs. ) | |
| Elaine M. Dusharm, ) | |
| Appellee. ) | |

Elegant Custom Homes ("ECH") and its owners appeal a final judgment entered after a bench trial before the Honorable Redfield T. Baum of the United States Bankruptcy Court for the District of Arizona. The Court has reviewed the memoranda filed by the parties. Dkt. ##9, 10, 13. The Court will affirm Judge Baum's decision.

**I.   Background.**

In the early 1990s, ECH entered the business of home construction in Mohave County, Arizona. Dkt. #4 at 21. ECH was owned by William S. Robertson and his wife, Stacy, and James E. Robertson and his wife, Dorothy (collectively with ECH the "Appellants"). *Id*.

ECH financed the construction of specific homes through loans provided by individuals. *Id*. at 22. In 1996, ECH began obtaining loans from Elaine M. Dusharm ("Appellee"). *Id*. at 21. These loans were generally linked to specific homes, and Appellee's loans were repaid when the homes were sold. *Id*. at 22. Appellee loaned ECH $34,000 on

December 21, 1999 and $54,000 on January 27, 2000. ECH signed promissory notes on both loans. *Id*; Dkt. #10 at 7. There is no evidence that the loans were linked to specific projects, but after receiving the loans ECH began work on two projects owned by the Robertsons, Affinity, LLC and Kokopelli, LLC. Dkt. #4 at 22.

Although ECH paid the construction costs for Affinity and Kokopelli and received some payments from the Robertsons, the Robertsons took more money from ECH than they paid. *Id*. ECH has not filed income tax returns or quarterly reports with the IRS or the State of Arizona since 1994. *Id*. Nor has ECH paid federal or state payroll taxes since 1994. *Id*. While ECH maintained a general ledger regarding funds received and disbursed along with certain accounting records, bank statements, cancelled checks, and receipt books, ECH did not maintain other accounting records such as balance sheets, profit and loss statements, or cash flow statements. *Id*.

ECH did not repay the loans to Appellee. ECH filed for bankruptcy in August of 2002. *Id*. at 26. The bankruptcy trustee ultimately reached a settlement with the Robertsons for $15,000 to cover work ECH did for Affinity and Kokopelli and unaccounted cash the Robertsons took from ECH. Dkt. #9 at 15.

The bankruptcy court found, based on the testimony and evidence at trial, that ECH was insolvent when Appellee loaned the first of the two unpaid loans to ECH and at every point thereafter. Dkt. #4 at 23. The bankruptcy court also found that ECH was the alter ego of the Robertsons based on (1) the inadequate record keeping of the affairs of ECH and its blatant disregard for its tax duties and liabilities; (2) the Robertson's use of ECH to build the Affinity and Kokopelli projects, the lack of appropriate records related to those projects, and the transfer of those projects to the Robertsons; (3) the use of ECH to divert funds to the Robertsons as needed or wanted by them; and (4) the overall failure of ECH to repay the $88,000 owed to Appellee while engaging in the above activities with the Robertsons. *Id*. at 24-26.

The bankruptcy court found that the corporate veil of ECH could be pierced to hold the Robertsons liable on the loans and accompanying attorney's fees because the facts

showed a unity of interest and ownership between ECH and the Robertsons that blurred their separate personalities, and because "it would be an injustice to Dusharm to not pierce the corporate veil and hold the Robertsons liable for ECH's debts to Dusharm." *Id.* at 27.

For purposes of the appeal, Appellants "do not dispute the findings of the [bankruptcy court] that the corporation was undercapitalized and was [the Robertson's] alter ego." Dkt. #9 at 16. Rather, Appellants contend that the alter ego claim belonged to the bankruptcy estate, not Appellee; that a showing of fraud is required to pierce the corporate veil; and that they cannot be held liable for attorneys' fees. The Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re American Mariner Industries, Inc.*, 734 F.2d 426, 429 (9th Cir. 1984).

**II.     Whether an Alter Ego Claim is Property of the Bankruptcy Estate.**

Appellants argue that the alter ego claim asserted by Appellee is the property of the bankruptcy estate. Dkt. #9 at 11. If the claim belongs to the estate, Appellee lacks standing to assert it.

A bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of § 541 is broad and includes all causes of action. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983). State law determines the property rights of the debtor. *Butner v. United States*, 440 U.S. 48, 54 (1979). Once a bankruptcy petition is filed, a right of action that is property of the debtor becomes property of the estate. 11 U.S.C. § 541(a)(1). Therefore, a court must determine whether the applicable state law vests the right of action in the debtor. *In re Folks*, 211 B.R. 378, 384 (B.A.P. 9th Cir. 1997). "If Ninth Circuit and [Arizona] law permit a debtor to assert an alter ego claim to pierce its own corporate veil, that claim becomes property of the estate; and if alter ego claims constitute property of the bankruptcy estate, then they cannot belong to any individual creditor, and thus may not be asserted by individual creditors." *Id.* (citing *In re Davey Roofing, Inc.*, 167 B.R. 604, 606 (Bankr. C.D. Cal. 1994)).

- 3 -

1 No Arizona Supreme Court case answers the question of whether a corporation may pierce its own corporate veil. This Court must therefore "predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Vestar Development II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (citations omitted). If there is no evidence that the Arizona Supreme Court would decide the issue differently, the Court "is obligated to follow the decisions of the state's intermediate appellate courts." *Id*.

The Arizona Court of Appeals has stated that "[t]he doctrine of 'piercing the corporate veil' based on alter ego and fraud does not apply to claims asserted by corporate shareholders. This doctrine is only available to third parties who deal with the corporation." *Jones v. Teilborg*, 727 P.2d 18, 25 (Ariz. Ct. App. 1986) (denying corporate shareholders the right to pierce a corporate veil to obtain payments from other shareholders).

Two federal cases applying Arizona law have addressed the issue indirectly. In *Keams v. Tempe Technical Institute, Inc.*, 993 F. Supp. 714 (D. Ariz. 1997), a third party brought an alter ego claim against the individual shareholders of a bankrupt corporation. The court held that the liability of the shareholders – if veil-piercing was allowed – was not a dischargeable liability under bankruptcy laws, but that the plaintiff had not shown that the corporation was an alter ego. *Id*. at 723. The court's consideration of the third party's alter ego claim suggests that the claim can belong to a third party, not the bankruptcy estate, but the issue was not addressed directly. On the other hand, a federal bankruptcy court sitting in Arizona noted in dicta that some courts in other states have allowed bankruptcy trustees to pierce the corporate veil. *In re Southwest Supermarkets, LLC*, 325 B.R. 417, 426 (Bankr. D. Ariz. 2005).

The laws of other states vary widely. States where bankruptcy courts have allowed an alter ego action to be brought by a corporation include California, Texas, Nevada, Utah, Virginia, and Ohio. *See In re Folks*, 211 B.R. at 386 (California); *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir. 1987) (Texas); *In re Western World Funding, Inc.*, 52 B.R. 743, 783 (Bankr. D. Nev. 1985), aff'd in part, rev'd in part, 131 B.R. 859 (D. Nev. 1990),

- 4 -

decision rev'd, 985 F.2d 1021 (9th Cir. 1993); *ANR Ltd. v. Chattin*, 89 B.R. 898, 903 (D. Utah 1988); *Steyr-Daimler-Puch of America Corp. v. Pappas*, 852 F.2d 132, 135-36 (4th Cir. 1988) (Virginia); *St. Paul Fire and Marine Ins. Co. v. PepsiCo Inc.*, 884 F.2d 688, 700-01 (2d Cir. 1989) (interpreting Ohio law).[1] These cases seek to benefit the debtor corporation's estate, "ultimately benefitting the estate's creditors" in accordance with "the Bankruptcy Code's ultimate goal of balancing the equities and interests of all affected parties in a bankruptcy case." *In re Folks*, 211 B.R. at 386.[2]

Bankruptcy courts in other states, including Arkansas, North Dakota, Missouri, Michigan, and Maryland, have held that a corporation may not pierce its own veil. *See In re Ozark Equipment Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir. 1987) (Arkansas); *In re Dakota Drilling, Inc.*, 135 B.R. 878, 884 (Bankr. D. N.D. 1991); *In re Mar-Kay Plastics, Inc.*, 234 B.R. 473, 481 (Bankr. W.D. Mo. 1999); *In re RCS Engineered Products Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996) (Michigan); *In re Transcolor Corp.*, 296 B.R. 343 (Bankr. D. Md. 2003). These states hold that piercing the corporate veil is designed to protect the rights of third party creditors, not the rights of the corporation itself, and that to allow a corporation to pierce its own veil would have the effect of denying the corporation its own corporate existence. *See, e.g.*, *In re Ozark*, 816 F.2d at 1225; *In re Dakota Drilling*, 135 B.R. at 884.

Relevant treatises suggest that there is no clear majority view. One treatise states that "[g]enerally, the corporate veil is never pierced for the benefit of the corporation or its stockholders[.]" 18 Am.Jur.2d Corporations § 49 (2007). Another recognizes "a split of

---

[1] In the lead case cited by Appellants, *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1348-49 (7th Cir. 1987), the Seventh Circuit held that Illinois law provided a bankruptcy trustee with the right to bring an alter ego action, but the Illinois Supreme Court strongly questioned that decision in a decision stating that a corporation may not sue its parent corporation under an alter ego theory. *In re Rehabilitation of Centaur Ins. Co.*, 632 N.E.2d 1015, 1018-19 (Ill. 1994).

[2] Even in these cases, third party creditors may generally assert alter ego claims if their injuries are personal and not general. *See, e.g.*, *In re Folks*, 211 B.R. at 388. Given the decision in this order, the Court need not decide whether Appellee's injury was personal.

1  authority as to whether an alter ego action, or an action to pierce the corporate veil, becomes
2  property of a corporate debtor's estate[.]" 9A Am.Jur.2d Bankruptcy § 1264 (2007). Yet
3  another concludes that "[a] trustee of a bankrupt corporation is the proper party to bring an
4  alter ego action against its shareholders." 1 Fletcher Cyc. Corp. § 41.55 (2006). A recent
5  survey of cases acknowledges a split of authority. Roberts, Jr., S., *Norton Annual Survey of*
6  *Bankruptcy Law* § 18 (2006).

7  Considering the question de novo, the Court concludes that an Arizona corporation
8  may not pierce its own veil. There is no Arizona Supreme Court case on point, and the split
9  of authority elsewhere suggests that there is no prevailing view that the Arizona Supreme
10 Court likely would follow. The Court therefore will apply the rule stated by the Arizona
11 Court of Appeals that only third parties who deal with the corporation may bring a veil-
12 piercing action. *Jones*, 727 P.2d at 25.

13 **III.    Whether a Showing of Fraud is Required to Pierce the Corporate Veil.**

14 Appellants argue that even if ECH were the alter ego of the Robertsons, Appellee has
15 not made the showing of fraud necessary to pierce the corporate veil. It has long been the
16 law in Arizona that the corporate form will be disregarded when the corporation is the alter
17 ego of one or more individuals and "the observance of the corporate form would sanction a
18 fraud or promote injustice." *Employer's Liability Assurance Corporation v. Lunt*, 313 P.2d
19 393, 395 (Ariz. 1957). The bankruptcy court did not find that Appellee had been defrauded,
20 but found that "it would be an injustice to Dusharm to not pierce the corporate veil and hold
21 the Robertsons liable for ECH's debts to Dusharm." Dkt. #4 at 27.

22 Appellants argue that fraud, not injustice, is required. Dkt. #9 at 21. Appellants rely
23 primarily on the Ninth Circuit Bankruptcy Appellate Panel ("BAP") case of *In re Nash*, 60
24 B.R. 27, 29 (B.A.P. 9th Cir. 1986), which held that Arizona law required a showing of fraud
25 before the corporate form will be disregarded. The BAP noted "a great reluctance under
26 Arizona law to disregard the corporate form" and stated that "[a] careful examination of
27 Arizona case law reveals that no modern Arizona court has ever pierced the corporate veil
28 unless it found that fraud existed." *Id.* at 30.

- 6 -

Five years after the decision in *Nash*, however, the Arizona Supreme Court reiterated its test for piercing the corporate veil. *See Gatecliff v. Great Republic Life Insurance Co.*, 821 P.2d 725, 728 (Ariz. 1991). The court stated "that the interrelationship between the two corporations may promote *fraud or injustice* and thereby satisfy the second prong of the alter ego standard." *Id*. at 729 (emphasis added). While other federal cases have relied on *Nash* and stated that fraud is required, *see, e.g.*, *Sanner v. Birdsell*, 218 B.R. 941, 947 (Bankr. D. Ariz. 1998), *Gatecliff* represents the most recent statement of law from Arizona's highest court. This Court cannot conclude that the Arizona Supreme Court's statement of Arizona law was an inadvertent error. Under *Gatecliff*, injustice may suffice to disregard the corporate form once the alter ego showing has been made.

Appellants also challenge the bankruptcy court's factual finding of injustice. Dkt. #9 at 25. The finding was based on several facts: ECH sought loans from Appellee when it was insolvent and had not paid taxes; the Robertsons took money from ECH to construct the Affinity and Kokopelli projects they owned individually; and ECH kept inadequate records. Dkt. #4 at 27. The bankruptcy court had the "strong sense that [the Robertsons'] benefits were obtained from [Appellee's] unpaid debts." *Id*.

Appellants dispute the finding of injustice by arguing that Appellee was not aware of ECH's financial condition and record keeping practices and therefore could not have relied on them when she made the loans. But reliance is an element of fraud, and the bankruptcy court did not base its decision on fraud. Appellants cite no authority for their argument that a party must have relied on the absence of adverse facts before the existence of those facts can work an injustice. The injustice in this case arises from the Robertsons' self-dealing while ECH was headed toward bankruptcy and the fact that Appellee knew nothing about that self-dealing or ECH's insolvency when she made the loans. The Court finds no clear error in the bankruptcy court's finding of injustice.

**IV.    Attorney's Fees.**

Arizona law provides for an award of attorney's fees to the prevailing party in a "contested action arising out of a contract, express or implied[.]" A.R.S. § 12-341.01. "An

action arises out of contract under A.R.S. § 12-341.01(A) if it could not exist 'but for' the contract." *Hanley v. Pearson*, 61 P.3d 29, 33 (Ariz. Ct. App. 2003) (quoting *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1141 (Ariz. 1982)). Attorney's fees are available for claims arising from express contracts and contracts implied-in-fact, both of which necessitate "an undertaking of contractual duty imposed by reasons of a promissory expression." *Barmat v. John and Jane Doe Partners*, 747 P.2d 1218, 1220 (Ariz. 1987) (quotations omitted).

Arizona's alter ego cases do not discuss attorney's fees. Appellee notes that most of the cases cited by Appellants were decided before A.R.S. § 12-341.01 was enacted. Dkt. #10 at 20. The Arizona alter ego cases decided after the statute are silent on the issue of attorney's fees, but nothing about them implies that attorney's fees are not available in such cases. *Id*.

Alter ego claims in Arizona may arise out of contract. *See, e.g.*, *Dietel*, 492 P.2d at 457 (Plaintiff "filed a third-party complaint against Dietel, as the alter ego of Filmlab, Inc., for breach of contract."). Appellants characterize veil piercing as a distinct cause of action (Dkt. #9 at 35), but the doctrine is not a cause of action in itself. Rather, it is a means to vindicate the interests of parties injured through a breach of contract or a tort. *See, e.g., International Financial Services Corp. v. Chromas Technologies Canada, Inc.*, 356 F.3d 731, 735-36 (7th Cir. 2004) ("Piercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim, here breach of contract."); *Gallagher v. Bintliff*, 740 S.W.2d 118, 119 (Tex. App. 1987) ("An attempt to pierce the corporate veil, in and of itself, is not a cause of action but rather is a means of imposing liability on an underlying cause of action such as a tort or breach of contract.").

The bankruptcy court correctly concluded that "plaintiff's core claim is based upon an express contract. No tort claim is involved." Dkt. #4 at 80. The liability at issue was created by the two promissory notes underlying the loans from Appellee. The Court therefore will affirm the bankruptcy court's conclusion that the action arose out of contract.

Although Appellants previously argued the award of $135,000 was excessive and unreasonable (Dkt. #4 at 54), they do not raise that argument on appeal.

**IT IS ORDERED:**

1. The judgment of the bankruptcy court is affirmed.

2. The Clerk of the Court is directed to terminate this action.

DATED this 14th day of May, 2007.

_____
David G. Campbell
United States District Judge